[No. 38870.    Department Two.    September 7, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. GORDON MICHAEL
ALLEN, *Defendant*, LEROY BURR, JR., *Appellant*.*

*Henry Haas,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Eugene G. Olson, and Joseph D. Mladinov,* for respondent.

LANGENBACH, J.†—Appellant Burr and one Gordon Michael Allen were jointly tried for armed robbery in Pierce

*Reported in 431 P.2d 590.

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

County. Each had individual counsel and each has appealed separately alleging, in each instance, different errors. (Appellant's counsel on appeal was not his trial counsel.)

On June 29, 1965, a tavern was held up and its cash receipts were taken from the bartender by two armed men. Several of the tavern's patrons witnessed the robbery. Some of these later identified appellant and Allen as the robbers and so testified at the trial.

The robbers entered at the back door. One of them, identified as appellant, went to the front door and closed it. He told the patrons to behave, suggesting that this might be their last look at him. The patrons saw a man with a goatee, wearing a short-sleeved sweatshirt and carrying a 9mm gun in his right hand. He did not wear glasses and had, possibly, a tatoo on his right arm. He was also described as "high" and his eyes were glassy. The other robber, later identified as Allen, remained in the rear of the room by the bar. He carried a .22 pistol and obtained a considerable sum of money from the bartender.

Both appellant and Allen denied being at the scene of the robbery. Appellant subpoenaed witnesses who testified that he always wore glasses, had never had a goatee and was almost blind in one eye. In addition, three witnesses were produced, two of whom said that they had committed the robbery. One of them owned a 9mm gun and the second owned a .22 pistol. The third said that he waited outside in the get-away car.

A search of Allen, after he was arrested, revealed that his wallet contained a slip of paper on which appeared appellant's first name and telephone number. The slip of paper was not produced at the trial, having become either lost or misplaced since the first trial. The court allowed a detective to testify to the paper's contents, having satisfied itself that the paper was not available. Appellant objects that it was error to admit this testimony because the failure to present the paper itself was not satisfactorily explained. He argues that the record does not show that a reasonable effort had been made to produce the instrument.

40

■ There is some merit in appellant's contention that no great effort seems to have been made to produce the best evidence of the paper's contents. However, "[a]s to what will be considered a reasonable effort is dependent to a considerable extent upon the importance, in the case, of the written instrument." *Roslyn v. Pavlinovich,* 112 Wash. 306, 308, 192 Pac. 885 (1920). In the *Roslyn* case, guilt or innocence turned on the paper's contents. In the instant case, appellant can argue only that testimony about the contents of the paper could lead a jury to infer that appellant and Allen were acquainted. It will be remembered that eyewitnesses testified that two men, whom they identified as appellant and Allen, robbed the bartender. At most, the inference of which appellant speaks, would merely add some support to the eyewitnesses' identifications and be a factor in the jury's determination of their credibility. Under these circumstances we cannot say that the trial judge erred in declaring the paper's nonavailability sufficient to justify admission of the detective's testimony.

During the trial a detective twice testified without objection that he had shown a "mug picture" of appellant to several witnesses. When he used the term a third time, counsel for Allen asked that the jury be excused and in their absence told the court he did not want to hear such terms used in testimony. The court agreed to instruct the witness. At this point appellant's counsel, admitting that he had not objected to the testimony, moved for mistrial. He argues that the court's denial of this motion was error.

■ The term "mug picture" was used without objection until, out of the jury's presence, the witness was asked to use the term "photograph." There was no motion to strike nor was there a motion for an admonitory instruction. It is not necessary to decide whether appellant waived any rights by failure to make an objection when the term "mug picture" was used. Viewing the use of this term by the witness against the backdrop of all the evidence, we do not believe that it so tainted the proceedings that appellant did not have a fair trial. *Stave v. Nettleton,* 65 Wn.2d 878, 880,

400 P.2d 301 (1965). See also *Stave v. Duree*, 52 Wn.2d 324, 324 P.2d 1074 (1958).

We most emphatically do not condone the use of terms like "mug shot" or "mug picture" by state witnesses in criminal prosecutions. It would not unduly burden the state were it to instruct its witnesses, prior to trial, not to fall into the use of such terms while giving testimony. Besides raising the inference of prior convictions, the voluntary use of such derogatory slang terms is unseemly and should not be permitted.

■ At one point during the trial the prosecuting attorney attempted to have appellant roll up his sleeve in order to disclose whether he had a tatoo on his right arm. Appellant's objection to this procedure was at first overruled, but after a conference in the absence of the jury, the court sustained the objection. In *State v. Craig*, 67 Wn.2d 77, 82, 406 P.2d 599 (1965), we noted that "[t]he privilege against self-incrimination applies to testimonial compulsion only. It does not apply to a simple physical act, a bodily action like taking off shoes or rolling up sleeves or writing for identification." Nonetheless, appellant argues that the court erred because, after having sustained an objection to the request, it denied his motion for a cautionary instruction. There is no merit in this assignment.

Appellant's final assignment of error is grounded on the claim of newly discovered evidence, previously available to the state but not brought forth at trial. For this reason he argues that the court erred in denying his motion for a new trial.

■ As noted earlier, two defense witnesses testified that it was they who committed the crime for which appellant was charged. One of them, Richard Thomas, stated that he committed the crime armed with a 9mm Luger. When he was arrested he had in his possession a 9mm Starr. Appellant argues that had this 9mm Starr been produced at trial it would have added credence to the testimony of Thomas that he robbed the tavern with a 9mm Luger.

Even granting that the discovery of the 9mm Starr is material to the issue, it does not appear " 'that the evidence is such as will probably change the result if a new trial is granted . . . .' " *State v. Wilson,* 38 Wn.2d 593, 621, 231 P.2d 288 (1951). Further, this evidence could have been discovered prior to trial. Thomas, one of the key witnesses for appellant, had only to be asked by appellant what had become of his gun. The trial court did not abuse its discretion in denying appellant's motion for a new trial.

The judgment and sentence is affirmed.

FINLEY, C. J., DONWORTH, HUNTER, and NEILL, JJ., concur.