[No. 200-2.    Division Two.    March 31, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES FRANCES NEWMAN, *Appellant.*

*James B. Gorham* (of *Sawyer & Gorham*), for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel,* and *Eugene G. Olson, Chief Criminal Deputy,* for respondent.

PETRIE, C.J.—On the evening of November 6, 1969, David Nelson, the attendant, and Michael Masella, his friend, were in the process of closing Harold's Service Station in Tacoma. As Masella was removing his car from the garage and parking it, two young men entered the station office and forced Nelson to empty the cash register. Masella reentered to find the robbery in progress. Nelson was then forced to open a safe in a rear room. The robbers removed the money therefrom and fled. During the subsequent investigation, Masella identified the photograph of James Frances Newman. He also identified Newman on the basis of his appearance and voice at a lineup and again at trial. On the other hand, Nelson was unable to make an identification at any time.

At trial, Masella's identification was the only link between Newman and the crime. The appellant offered an

alibi witness but did not take the stand himself. The jury found him guilty of robbery and found that he was armed with a deadly weapon. Newman appeals.

Because the only evidentiary link between Newman and the crime was the eyewitness identification, the appellant subjected the identification procedures to a rigorous attack at trial; it continues on appeal. The facts of the identification are as follows: Masella was shown a group of 12 photographs by the police on the day following the robbery. He selected Newman's picture. At a subsequent lineup, which appellant's counsel attended, Masella identified Newman on the basis of both his appearance and his voice. At trial, he again identified the appellant.

When the use of photographs for identification in a criminal investigation is questioned, the primary inquiry[1] is directed toward whether or not the use of these photographs was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This is a legal question to be resolved by the court—the answer to which, however, is determined by the totality of the factual circumstances in each case. *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968).

We have examined the photographs and reviewed the record as to police conduct at the time of showing these photographs. It is our opinion that neither the content of the photographs nor the conduct of the police can be characterized as impermissibly suggestive. Accordingly, we hold that the appellant was not denied due process of law.

Appellant also contends that these photographs were admitted without proper foundation. This question arises because of an internal police procedure whereby a "book" of photographs is maintained for continuing use in criminal investigation. In its daily use, photographs are removed

---

[1]Under an appropriate set of circumstances, there may also be a more basic inquiry as to whether or not the mere use of photographic identification was constitutionally permissible. *See State v. Ferguson*, 3 Wn. App. 898, 479 P.2d 114 (1970) for a discussion of this problem when the suspect is already incarcerated. But *see also State v. Prater*, 1 Wn. App. 342, 461 P.2d 357 (1969).

from the book and either replaced by others or later returned. It is this use of the book which leads to the present question. The record maintained by any officer using this book is based on the police identification numbers on the photographs therein at the time he shows it to a witness. According to the record, these identification numbers are assigned to a person at the time of his first photographing; should he at some future time again be photographed, this original number will be used.

Appellant argues that since many of the persons whose photographs were in the book used in this case have admittedly been photographed on other occasions, the record kept by the officer is only a basis for the statement that these are the men whose photographs were in the book, and is not sufficient foundation for the statement that these are the precise photographs which were shown to the witness. Undoubtedly, this question would not now be before us had the police used both the identification number and the date of the photograph as a means of record-keeping. However, the detective who testified herein stated that he was certain these were the same photographs which he had shown to Masella and Nelson. The trial court decided to admit the photographs. The general rule is that the admission of photographs is discretionary with the trial court and its decision, absent gross abuse, will not be disturbed on appeal. *State v. Griffith*, 52 Wn.2d 721, 328 P.2d 897 (1958). We are unable to say that the trial court abused its discretion in this matter.

Appellant's final contention regarding these photographs is that the admission of his photograph denied him a fair trial. It was plainly marked with a police identification number and a date several months prior to the robbery herein; it was what is often referred to as a "mug shot." In another case we might possibly find this admission constituted prejudicial error. *See State v. Smith*, 74 Wn.2d 744, 446 P.2d 571 (1968); *State v. Allen*, 72 Wn.2d 38, 431 P.2d 590 (1967); *State v. Kritzer*, 21 Wn.2d 710, 152 P.2d 967 (1944). However, counsel for the appellant made no objec-

tion specifically directed to this problem; indeed, in voir dire examination of the detective prior to the admission of these photographs, counsel for the appellant brought to the attention of the jury the fact that these photographs were of men who had been arrested on other occasions. That was a tactical decision to elicit this testimony as support for his objection to the foundation for admission of these photographs. While counsel appointed on appeal was not counsel at trial, he is nevertheless bound by the tactical decisions of his predecessor. We must conclude on the basis of this record that any error in the admission of these photographs was invited by counsel for appellant.

Of the remaining assignments of error, only two require discussion. First, appellant contends that a video tape recording of his lineup was admitted without proper foundation. He places great reliance on *State v. Williams*, 49 Wn.2d 354, 301 P.2d 769 (1956), contending that the standards outlined therein were not observed in this case.[2]

But that case dealt specifically and expressly with audio wire or tape recordings. The issue then is whether or not the stringent requirements for the admission of audio wire or tape recordings in *Williams* should also be applied to video tape recordings.[3] Our research reveals no case in this state in which the Williams standards have been held applicable to the admission of either still photographs or

---

[2]The standards were set out in a direct quotation from a Georgia case as follows at page 360:

"Let us then inquire what safeguards are necessary before such mechanical transcription devices may be used. A proper foundation for their use must be laid as follows: (1) It must be shown that the mechanical transcription device was capable of taking testimony. (2) It must be shown that the operator of the device was competent to operate it. (3) The authenticity and correctness of the recording must be established. (4) It must be shown that changes, additions, or deletions have not been made. (5) The manner of preservation of the record must be shown. (6) Speakers must be identified. (7) It must be shown that the testimony elicited was freely and voluntarily made, without any kind of duress."

[3]For a general discussion of the use of video tape recordings at trial, see A. Morrill, *Enter—The Video Tape Trial*, Vol. 3, No. 2, The John Marshall Journal of Practice and Procedure 237 (1970).

sound movies. To lay a proper foundation for such demonstrative evidence, it is only required that some witness, not necessarily the photographer, be able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portrays the subject illustrated, *State v. Tatum,* 58 Wn.2d 73, 360 P.2d 754 (1961). It is then admissible in the sound discretion of the trial court, *State v. Tatum, supra. See also Roberts v. Goerig,* 68 Wn.2d 442, 413 P.2d 626 (1966) (movie film strip).

In our effort to determine how the courts of other states have considered this question, we have been able to discover only one case in which the foundation for admission of video tape evidence was discussed. In *Paramore v. State,* 229 So. 2d 855 (Fla. 1969), the Florida Supreme Court was faced with the question of whether the trial court had properly admitted a video tape confession of the defendant when the state had not shown continuity of possession of the video tape. The court held that the rule governing admissibility into evidence of photographs applies with equal force to the admission of motion pictures and video tapes, and that since the accuracy of the video tape had been established, it was properly admitted.

We agree. The requirements for the admission of video tapes should be similar to those for photographs. In the present case, the detective witness testified concerning the circumstances of the video tape recording of the lineup and also testified that it was a fair and accurate reproduction of the appellant's lineup. The court then admitted the video tape recording.

We are unable to say that this was an abuse of discretion. It appears, however, to be the better procedure for the court and opposing party to preview the video tape recording or film in the absence of the jury. *See* P. Paradis, *The Celluloid Witness,* 37 U. Colo. L. Rev. 235, 246 (1964-1965). We believe that such a procedure will substantially reduce the risk of error or mistrial as a result of something in the film subsequently shown to the jury.

594

■   The final assignment of error requiring extended comment is whether the court erred in submitting instructions No. 11 and 21[4] to the jury. Both related to the special verdict of whether appellant was armed with a deadly weapon. This is a procedure authorized by RCW 9.95.015[5] for the purpose of providing the Board of Prison Terms and Paroles with sufficient information for it to act pursuant to RCW 9.95.040[6] which contains minimum sentencing limitations. The rule applied to the use of this special interroga-

---

[4]Instruction No. 11—"The words 'deadly weapon' as used in these instructions shall include any pistol, revolver, or any other firearm."

Instruction No. 21—"If you shall find the defendant guilty of the crime charged in the information, you will be required to answer whether the evidence in the case established that the defendant was armed with a deadly weapon at the time of the commission of such offense."

[5]RCW 9.95.015 provides: "In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime."

[6]RCW 9.95.040 provides in part: "The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

"The words 'deadly weapon,' as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas."

tory is that where the trial court has a reasonable basis to believe from the evidence that the defendant was armed with a deadly weapon while in the commission of the felony charged, it may submit to the jury the question of whether or not the defendant was armed with a deadly weapon. *State v. Slaughter,* 70 Wn.2d 935, 425 P.2d 876 (1967); *State v. Williams,* 3 Wn. App. 336, 475 P.2d 131 (1970).

■ In the present case, both eyewitnesses testified that one of the robbers was armed with a .22 caliber pistol; Masella testified that the appellant was the robber who was so armed. Appellant acknowledges this evidence but contends that since neither witness could state whether the gun was loaded or whether it was capable of being fired, there was no evidence that the alleged pistol was a "deadly weapon." We must disagree. As we read RCW 9.95.040, it is a clear statutory declaration that, for purposes of fulfilling the court's responsibility under RCW 9.95.015, a pistol is a deadly weapon. The prosecution is not required to prove that it was loaded or even that it was capable of being fired.

We conclude that there was sufficient basis for the court to submit this special interrogatory to the jury. *Compare State v. Slaughter, supra, with State v. Gough,* 2 Wn. App. 733, 469 P.2d 568 (1970).

Judgment affirmed.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied April 12, 1971.

Review denied by Supreme Court May 26, 1971.