[No. 5856-1-II. Division Two. May 18, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. JODY LEE RAHIER, *Appellant.*

*James D. Hamilton,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard Melnick, Deputy,* for respondent.

REED, J.—Jody L. Rahier appeals his armed robbery conviction. He assigns as error the admission of some bullets into evidence, the alleged preclusion of his closing argument that an unloaded gun is not a deadly weapon for purposes of RCW 9.95.040, and the denial of his request for a continuance of the sentencing hearing. We affirm.

The main issue at Jody L. Rahier's jury trial for the November 5, 1980 armed robbery of the Camas Arco station was the identity of Rahier as the perpetrator. Candy Thorn, the 16–year–old gas station attendant held up at gunpoint, was unable to identify the robber because he wore a ski mask over his face. Douglas Runkle[1] testified that he and Rahier borrowed their friend Pam Fuller's car to drive from Washougal to Longview on November 5, 1980. On the way Rahier announced his intention to rob the Camas Arco station. They stopped, and Rahier left the car, returning with a paper bag containing money. Runkle testified that he saw a pistol with a light–colored handle in Rahier's belt. There was evidence that both Rahier and Runkle knew that a friend's father, Mr. Lanning, kept a gun in his Blazer automobile. According to Pam Fuller, Rahier told her that Runkle had taken the gun from Lanning's Blazer and replaced it after the robbery. Several days later, the police retrieved the gun from the Blazer and conducted a search of Pam Fuller's car, finding a single bullet.

---

[1]Runkle pleaded guilty to rendering criminal assistance for his participation in the robbery.

The gun, a "pearl-handled" pistol, was loaded with six bullets similar to the single bullet seized from the Fuller car. Mr. Lanning's gun, the six bullets and the single bullet were introduced into evidence at Rahier's trial.

Resolving the identity issue against Rahier, the jury found him guilty of robbery in the first degree as charged. Because the information alleged that Rahier had been armed with a deadly weapon as required for penalty enhancement pursuant to RCW 9.95.015 and RCW 9.95-.040, the jury was requested to make a special finding. It found beyond a reasonable doubt that Rahier had been armed with a deadly weapon.

At sentencing Rahier's request for additional time to prepare was denied, and he was given a prison sentence of 60 years. Because of the special finding and prior convictions, his mandatory minimum pursuant to RCW 9.95-.040(2) is 7½ years. Rahier appeals both the conviction and sentence.

Rahier first contends that the six bullets found inside Mr. Lanning's gun at the time it was seized were inadmissible because they were irrelevant and inflammatory. Although Rahier is correct that the State did not have to prove the gun was loaded for either robbery or penalty enhancement, RCW 9A.04.110(6); RCW 9A.56.200; *State v. Newman,* 4 Wn. App. 588, 484 P.2d 473, *review denied,* 79 Wn.2d 1004 (1971), we do not agree that the bullets were either irrelevant or unduly inflammatory.

Relevant evidence is evidence having any tendency to prove or disprove a fact that is of consequence to the determination of the action. ER 401. The six bullets found inside Mr. Lanning's gun were of the same caliber and manufacture as the single bullet found in the car used in the robbery. Defendant admitted to Pam Fuller that this was the gun used. The jury was thus entitled to draw the inferences that Mr. Lanning's gun was used and, although more tenuous, that the defendant was the one who used it. Also, the use of a real gun rather than a toy was in issue for penalty enhancement. *See State v. Tongate,* 93 Wn.2d 751,

613 P.2d 121 (1980). The identity of the defendant as the perpetrator was a fundamental fact in issue. The six bullets were relevant to prove identity.

█ █ Even though it was not necessary for the State to prove the pistol was loaded, and doubtless such evidence did not elevate defendant in the eyes of the jury, the State has the right, when guilt is denied, to present ample evidence to prove every element of the crime. *State v. Crenshaw,* 98 Wn.2d 789, 659 P.2d 488 (1983). Also, the jurors were entitled to have placed before them the entire story of what transpired. The bullets with the accompanying inference that the gun was loaded during the robbery are part of the res gestae and therefore relevant. *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981); *State v. Ramos,* 159 Wash. 599, 294 P. 223 (1930). *See also* 1 H. Herrick, *Underhill's Criminal Evidence* §§ 266, 267 (5th ed. 1956).

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice. ER 403. Weighing probative value against prejudicial effect is for the trial court within its sound discretion. *State v. Stevenson,* 16 Wn. App. 341, 555 P.2d 1004 (1976). Here, the record discloses a calculated weighing of the evidence by the trial judge and we cannot say discretion was abused. If there was prejudice, it was not *unfair.* The jury was entitled to know all of the facts surrounding the robbery.

Rahier next contends that under the court's instruction defining deadly weapon he should have been allowed to argue that an unloaded gun is not a deadly weapon for purposes of the special finding for penalty enhancement.[2] As noted above, this argument is contrary to law. *See State v. Newman, supra.* The jury was given the following definition of "deadly weapon."

A deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in

---

[2]Rahier does not claim that he should have been allowed to make this argument as a defense to the armed robbery charge. Under RCW 9A.04.110(6) a "loaded or unloaded firearm" is a "deadly weapon," and the jury was so instructed.

which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: pistol, revolver or any other firearm.

Instruction 6. We recognize that this instruction perhaps is subject to the interpretation placed on it by Rahier because an unloaded gun has no capacity to inflict death and is not likely to produce death when it is merely pointed at someone.

■ The record does not show, however, that Rahier attempted to make this argument *based on the jury instruction* and was precluded by the court. It was during argument over admission of the bullets that Rahier alerted the court that he wanted to argue this unloaded gun theory. The court told him correctly that he could not make this argument because it was contrary to law. The jury instructions, of course, were not selected or given until later. Nowhere does the record show that Rahier alerted the trial judge to the fact that the "deadly weapon" *instruction* as given would allow him to make his argument. Consequently, the judge made no ruling on the matter. The closing arguments are not in the report of proceedings. It is fundamental that, except in specific instances not applicable here, it is the duty of trial counsel to alert the court to his position and obtain a ruling before the matter will be considered on appeal. *See, e.g., State v. Jackson,* 70 Wn.2d 498, 424 P.2d 313 (1967) (exception to jury instructions); *State v. Sharp,* 15 Wn. App. 585, 550 P.2d 705 (1976) (objection to the admission of evidence). Defendant has not properly preserved this claim of error for review.

■ Even had defendant properly preserved his claimed error, his argument would have no merit. Instruction 6 tracks WPIC 2.07, which in turn uses the term "include" from RCW 9.95.040. The statute repeatedly has been interpreted to mean that the implements listed therein are deadly weapons as a matter of law. *State v. Thompson,* 88 Wn.2d 546, 564 P.2d 323 (1977); *State v. Beaton,* 34 Wn. App. 125, 659 P.2d 1129 (1983); *State v. Hattori,* 19 Wn.

App. 74, 573 P.2d 829 (1978); *State v. Chisholm,* 7 Wn. App. 279, 499 P.2d 81 (1972); *State v. Newman, supra.*

In the past we have criticized "slavish" use of all the language of WPIC 2.07. *State v. Beaton, supra.* We have also approved instructions that omit the prefatory language of the stock instruction and focus on the particular weapon involved, telling the jury that such is a deadly weapon and leaving them to find only whether it was in fact used. *State v. Newman, supra.* It follows, therefore, that when the charge is that a defendant used one of the implements listed in RCW 9.95.040, as was the case here, the prefatory language of WPIC 2.07 should be omitted. The jury should be instructed the implement is a deadly weapon as a matter of law.

In any event, had defendant properly presented his argument, the trial judge would have been entirely correct in refusing the request. Defendant would not be entitled to argue his erroneous interpretation to the jury, and the prosecutor would be free to argue that a pistol, whether loaded or unloaded, is a deadly weapon under the instruction. The law of the case doctrine, as urged by the defendant, does not apply in these circumstances.

Finally, Rahier contends that by denying his request for a continuance of the sentencing hearing the court denied him his right to speak at sentencing. *See* CrR 7.1(a); *State v. Happy,* 94 Wn.2d 791, 620 P.2d 97 (1980); *State v. Peterson,* 97 Wn.2d 864, 651 P.2d 211 (1982). Rahier requested the continuance to give him time to research penalties and to research prejudice of the trial judge as grounds for a new trial. Rahier does not claim that the sentence he received was contrary to law. His motion for a new trial had been denied the day before. Rahier, his attorney and the prosecutor spoke at length at sentencing. He does not claim that the court was not fully informed. Rahier's right of allocution was not infringed by the court's denial of a continuance.

Judgment and sentence affirmed.

PETRICH, C.J., and PETRIE, J., concur.