FILED
COURT OF APPEALS
DIVISION II

2014 JUN 10 AM 8: 40

STATE OF WASHINGTON
BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43578-1-II |
| Respondent, | Consolidated with: |
| v. | No. 44148-9-II |
| SCOTT ROSS NEWCOMB, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Scott Ross Newcomb appeals his conviction of first degree malicious mischief and the related restitution award. Newcomb argues that the trial court violated his right to confrontation by admitting photographs taken by a non-testifying officer during his trial and by considering estimates prepared by non-testifying contractors during his restitution hearing. Newcomb also argues that the trial court erred in calculating the amount of restitution imposed. Because neither the photographs nor the estimates triggered Newcomb's confrontation rights, and because the trial court did not abuse its discretion by imposing restitution of almost double the amount of the victim's loss, we affirm.

FACTS

In 2005, Timothy Kredlo bought property in Pacific County. To access his property, Kredlo needed to use an easement that crossed Newcomb's adjoining property. Kredlo's predecessors in interest sued Newcomb and his mother to ensure that they did not interfere with the easement, and the superior court issued a decree to prevent such interference.

As a condition of Kredlo's purchase, Daniel Bayne agreed to improve the existing road on the easement. Bayne built a gravel road on the easement in July 2006, and charged Kredlo $12,000 for the work. After the road's completion, Kredlo encountered Newcomb, who told Kredlo that he had bought a "sour lemon" because there was no vehicular access to his property. Report of Proceedings (RP) at 200; Clerk's Papers (CP) at 24. When Kredlo pointed out that he had a recorded easement, Newcomb disputed its legality as well as the validity of the court order barring his interference with the easement. He told Kredlo that he wanted to abandon the road and return the easement to its natural condition.

On October 13, 2006, Kredlo returned to the property and saw Newcomb on a payloader scraping gravel from the road. Kredlo observed that most of the gravel had been scraped away from the road. He called the sheriff's office, and Deputy Ryan Pearson came out to observe the damage that day. Pearson did not have a camera and asked Deputy Robin Souvenier[1] to take photographs of the easement road on his way to work the following day.

On October 16, Kredlo returned to the property and found that the remaining gravel on the easement road had been dug down and churned to a depth of two to three feet, and that three large stumps had been placed where the road had been. Kredlo also saw tire tracks leaving the road and leading to a gravel pile on Newcomb's property. The easement road was impassable for vehicular traffic.

---

[1] Deputy Souvenier's name is spelled two different ways in the record, Souvenier and Souvenir. For purposes of this opinion we use the Souvenier spelling.

The State charged Newcomb with first degree malicious mischief. Newcomb successfully moved to dismiss the resulting charge of first degree malicious mischief on the ground that a person cannot maliciously damage his own property. The State appealed, and this court reversed and remanded for trial. *State v. Newcomb*, 160 Wn. App. 184, 193, 246 P.3d 1286, *review denied*, 172 Wn.2d 1005 (2011).

On remand, Newcomb agreed to a bench trial. The State introduced the photographs through the testimony of Deputy Pearson, who testified that the photographs accurately represented the easement when he saw it on October 13, 2006. Kredlo testified to the facts cited above and Bayne testified that he gave Kredlo an estimate of about $7000 to repair the road shortly after it was damaged. The trial court admitted his 2006 estimate, which set the repair cost at $7263.56.

The trial court found Newcomb guilty as charged and imposed a 45-day sentence. During the restitution hearing, the State submitted four additional repair estimates that ranged from $9,378.60 to $21,484.54. Kredlo also requested reimbursement for a travel trailer on his property that he had purchased for $3500. The trailer was destroyed by mold because the road damage prevented Kredlo from getting power to it.

The trial court ordered Newcomb to pay $13,000 based on this explanation:

> I'm imposing $13,000.00. I'm approaching it from the, I'm going to say $7,500.00 figure to repair and then I'm not quite doubling that. I'm going to go up to $13,000.00 total so either way you cut it, it covers the expenses, but I'm not making a finding on the trailer specifically. There's too much grey area there. But I am imposing a doubling up to $13,000.00 dollars which in effect awards the same amount of money as if I did consider the trailer.

RP (Oct. 5, 2012) at 16; Suppl. CP at 1.

3

Newcomb appeals his conviction and the restitution award.

ANALYSIS

A. RIGHT TO CONFRONTATION

Newcomb argues that the trial court erred in admitting evidence that violated his confrontation rights during both his trial and his restitution hearing. Newcomb did not challenge the photographs or the estimates on this basis below, but we may address this issue for the first time on appeal if it constitutes a manifest error affecting a constitutional right under RAP 2.5(a)(3). *State v. Kronich*, 160 Wn.2d 893, 899-01, 161 P.3d 982 (2007), *overruled on other grounds; State v. Jasper*, 174 Wn.2d 96, 116, 271 P.3d 876 (2012). To satisfy RAP 2.5(a)(3), an appellant first must identify a constitutional error and then show how the alleged error affected his rights at trial. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

1. Photographs

Newcomb argues initially that the photographs of the road damage were testimonial statements made by a non-testifying witness that were admitted in violation of his Sixth Amendment right to confrontation. We disagree.

The Sixth Amendment's confrontation clause gives an accused the right to confront the witnesses against him. *State v. Jasper*, 174 Wn.2d 96, 109, 271 P.3d 876 (2012). The central function of this right is to protect individuals from the use of ex parte statements as evidence against them in criminal trials. *Crawford v. Washington*, 541 U.S. 36, 50-51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The confrontation clause bars the admission of testimonial hearsay

statements of a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54, 68.

Newcomb does not cite, nor could we find, any authority that directly supports his argument that photographs are testimonial statements. Instead, courts regard photographs as demonstrative evidence, depicting what the camera sees. *People v. Cooper*, 148 Cal. App. 4th 731, 746, 56 Cal. Rptr. 3d 6 (2007), *abrogated on other grounds by People v. Archuleta*, 225 Cal. App. 4th 527, 170 Cal. Rptr. 3d 361, *review filed* (May 19, 2014); *State v. Newman*, 4 Wn. App. 588, 593, 484 P.2d 473, *review denied*, 79 Wn.2d 1004 (1971). They are not statements, and they are not hearsay. *Cooper*, 148 Cal. App. 4th at 746; *State v. Iverson*, 126 Wn. App. 329, 340, 108 P.3d 799 (2005). Consequently, their admission in the absence of the photographer does not trigger confrontation clause concerns. *See Cooper*, 148 Cal. App. 4th at 746 (confrontation clause did not preclude admission of part of videotape depicting condition of victim's residence); *see also Sevin v. Jefferson*, 621 F. Supp.2d 372, 383 (E.D. La. 2009) (photograph of vehicle taken by traffic camera was not testimonial statement that implicated confrontation clause); *United States v. Beach*, 196 F. App'x. 205, 209 (4th Cir.) (admission of photographs of missing evidence did not violate confrontation clause), *cert. denied*, 549 U.S. 983 (2006); *Herrera v. State*, 367 S.W.3d 762, 773 (Tex. App. 2012) (autopsy photograph is not testimonial statement); *People v. Myers*, 87 A.D.3d 826, 829, 928 N.Y.S.2d 407 (2011) (photographs depicting victim's injuries are demonstrative rather than testimonial evidence); *State v. Tillman*, 289 S.W.3d 282, 294-95 (Mo. App. 2009) (photographs of victim's body are not testimonial).

Here, the photographs themselves did not constitute testimonial statements; therefore, their admission in the absence of the photographer was not error. The proper foundation for photographs requires only that some witness, not necessarily the photographer, be able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portrays the subject illustrated. *Newman*, 4 Wn. App. at 593. We reject this claim of constitutional error.

2. Repair Estimates

Newcomb argues next that the trial court violated his due process right to confront adverse witnesses under the Fourteenth Amendment by considering unsworn and unsigned estimates prepared by non-testifying contractors during the restitution hearing. We disagree.

In making this argument, Newcomb tacitly concedes that his Sixth Amendment right to confrontation does not extend to restitution hearings. *See State v. Abd-Rahmaan*, 154 Wn.2d 280, 288, 111 P.3d 1157 (2005) (confrontation clause of Sixth Amendment applies to criminal prosecutions and not to postconviction proceedings); *see also United States v. Loreng*, 956 F. Supp.2d 213, 222 n.4 (D.C. Dist. 2013) (confrontation clause protections do not extend to restitution proceedings); *United States v. Faxon*, 689 F. Supp.2d 1344, 1356 (S.D. Fla. 2010) (confrontation clause does not prohibit offer of hearsay at restitution hearing). As the *Loreng* court explained, when the guilt of the accused has been properly established, the sentencing judge is not restricted to evidence admitted during trial in determining the punishment to impose, but may consider "'responsible unsworn or 'out-of-court' information relative to the circumstances of the crime.'" 956 F. Supp.2d at 222 n.4 (quoting *Williams v. Oklahoma*, 358

6

U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959)). Nothing in *Crawford* alters the pre-*Crawford* law that the admission of hearsay testimony at sentencing does not violate confrontation rights. *Loreng*, 956 F. Supp.2d at 222 n.4 (citing *United States v. Bras*, 483 F.3d 103, 109 (D.C. Cir. 2007)).

Newcomb argues nonetheless that defendants have a due process right to confront adverse witnesses during a restitution hearing unless the court finds good cause not to allow the confrontation. As support, he cites the *Abd-Rahmaan* decision, which explained that this due process right applies to parole revocation hearings because parole revocation involves the potential deprivation of a conditional liberty. 154 Wn.2d at 288-89.

However, restitution involves no potential loss of liberty, and due process is "substantially relaxed" at a restitution hearing. *State v. Fambrough*, 66 Wn. App. 223, 226-27, 831 P.2d 789 (1992). To satisfy due process during a restitution hearing, the defendant must have an opportunity to refute the evidence presented, and the evidence must be reliable. *State v. Pollard*, 66 Wn. App. 779, 784-85, 834 P.2d 51, *review denied*, 120 Wn.2d 1015 (1992). Although the rules of evidence do not apply at restitution hearings, the evidence presented must be sufficient to support a finding of restitution in the amount ordered. *State v. Kisor*, 68 Wn. App. 610, 620, 844 P.2d 1038, *review denied*, 121 Wn.2d 1023 (1993); *Pollard*, 66 Wn. App. at 784.

Newcomb had ample opportunity to refute the written estimates submitted, all of which were from companies that repair roads. Furthermore, the trial court based its restitution award on the 2006 estimate provided by Daniel Bayne, who testified and was cross-examined during

trial. We reject Newcomb's claim of constitutional error based on either due process or confrontation grounds.

B. RESTITUTION AWARD

Newcomb raises two additional challenges to the restitution award. He first contends that the trial court exceeded its statutory authority by awarding Kredlo an amount of restitution that was almost double the amount established at the restitution hearing. He then contends that the trial court abused its discretion by ordering $13,000 in restitution after Kredlo suffered only $7,500 in damages.

Newcomb argues that his first claim must be reviewed de novo because it involves a question of statutory interpretation. *Sound Infiniti, Inc. v. Snyder*, 169 Wn.2d 199, 206, 237 P.3d 241 (2010). The statute at issue is RCW 9.94A.753, which provides in pertinent part as follows:

> [R]estitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. . . . The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.

RCW 9.94A.753(3).

Newcomb argues that the plain language of this provision prohibits a court from simply doubling the restitution amount and, thereby, granting the victim a windfall. *See Seashore Villa Ass'n v. Huggland Family Ltd. P'ship*, 163 Wn. App. 531, 538-39, 260 P.3d 906 (2011) (statute must be construed according to its plain language if that language is subject to only one interpretation), *review denied*, 173 Wn.2d 1036 (2012). Newcomb argues that the doubling language in RCW 9.94A.753(3) applies only when the court compensates third parties in

addition to the victim, so long as the total award does not exceed double the victim's loss. *See State v. Davison*, 116 Wn.2d 917, 921-22, 809 P.2d 1374 (1991) (interpreting "victim" within meaning of restitution statute to include city that paid wages to assault victim while he could not work).

The plain language of RCW 9.94A.753(3) does not support Newcomb's interpretation because it makes no reference to third-party recovery. Moreover, the Washington Supreme Court has interpreted the language of RCW 9.94A.753(3) without the restriction that Newcomb asserts:

> The plain language of the restitution statute allows the trial judge to order restitution ranging from zero in extraordinary circumstances, up to double the offender's gain or the victim's loss. . . . We do not engage in overly technical construction that would permit the defendant to escape from just punishment. The legislature intended "to grant broad powers of restitution" to the trial court.

*State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007) (quoting *Davison*, 116 Wn.2d at 920, 922).

As the Supreme Court has further explained, restitution is allowed only for losses that are causally connected to the crimes charged, and a causal connection exists if, but for the charged crime, the victim would not have incurred the loss. *State v. Griffith*, 164 Wn.2d 960, 965-66, 195 P.3d 506 (2008). Once the amount of the victim's loss is established, the court has discretion to order restitution up to double that amount. *Griffith*, 164 Wn.2d at 966. We reject Newcomb's argument that the trial court exceeded its statutory authority by awarding almost double the amount of Kredlo's loss.

9

No. 43578-1-II/
No. 44148-9-II

Moreover, we see no abuse of discretion in the trial court's decision to order $13,000 in restitution. Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. *Griffith*, 164 Wn.2d at 965.

The evidence submitted at Newcomb's restitution hearing provided a reasonable basis for estimating Kredlo's loss. The trial court's resulting order was based not on speculation but on five repair estimates, the lowest of which was from a contractor who testified at Newcomb's trial and the highest of which far exceeded the amount of restitution ordered. The trial court did not abuse its discretion by ordering Newcomb to pay restitution of almost double the amount of the lowest repair estimate.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Hunt, J.

_____
Bjorgen, A.C.J.

10