IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 78926-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| POY PUTH, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Poy Puth appeals his jury conviction for failing to register as a sex offender. He argues the trial court abused its discretion by admitting four "Sex and Kidnapping Offender Registration Notification" forms to show he knew of his registration requirements. He also argues that the trial court mistakenly concluded that it lacked discretion to impose a sentence concurrent to one he was already serving. We conclude that any prejudice from admitting Puth's registration notification forms did not substantially outweigh their probative value and that the trial court did not err in determining that former RCW 9.94A.589(2)(a) (2015)[1] compels consecutive sentences for offenders convicted of a new felony crime while under community custody for a prior felony conviction. We affirm Puth's conviction for failing to register as a sex offender.

---

[1] We note that the legislature amended RCW 9.94A.589(2)(a) in 2020 to provide that "any terms of community custody shall run concurrently to each other, unless the court pronouncing the current sentence expressly orders that they be served consecutively." LAWS OF 2020, ch. 276, § 1. The amendments do not pertain to Puth's argument before us.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

In 2004, a jury convicted Puth of rape of a child in the second degree. His conviction carries a lifetime sex-offender registration requirement and lifetime community custody. Since his release from custody in June 2013, the King County Sheriff's Office notified Puth of his registration responsibilities several times. Puth acknowledged notice of the requirements each time he changed addresses by signing a Sex and Kidnapping Offender Registration Notification form. The form lists the different crimes for which conviction requires registration as a sex offender, applicable statutes, notice of the requirement to register "within three business days" of an address change, penalties for failing to register, and contact information for questions. Puth signed each Sex and Kidnapping Offender Registration Notification form in the presence of a law enforcement officer and acknowledged, "It is your responsibility to understand and obey the law. Failure to comply is a criminal offense."

In November 2017, the State charged Puth with failure to register as a sex offender between May 23, 2016 and July 3, 2017. The State alleged that Puth traveled out of the state during that time and failed to register within three days of his return to Washington. The State also alleged that Puth left King County to reside in Pierce County and did not inform King County of the move or register in Pierce County within three days of the move.

Before trial, Puth stipulated that he had a prior conviction for "a Class A felony sex offense in 2004." At the conclusion of trial, the court instructed the jury that "[a] person convicted of a Class A felony sex offense must register for

2

life" as a sex offender.

At trial, the State offered four identical Sex and Kidnapping Offender Registration Notification forms signed by Puth on different dates between 2013 and 2014. Puth objected to the admission of his registration notification forms "in their entirety." Defense counsel argued that the forms were irrelevant and unduly prejudicial because they "invade[ ] the province of the judge to tell the jury what the law is." The State argued that the forms were relevant because the "whole crux of this case is whether Mr. Puth knew he had to register, whether he knew how to [register], whether he understood how he was supposed to do it, and whether he received notice of it." The court admitted the forms as exhibits. The jury convicted Puth as charged.

At the time of sentencing, Puth was serving lifetime community custody for the underlying 2004 rape of a child in the second degree conviction and was currently in custody for violating the conditions of that sentence. The prosecutor told the court that the State "has no interest in over-prosecuting Mr. Puth" and recommended credit for time served of about 9 months. But the prosecutor argued the statute "requires it to run consecutive." The State also argued the court had to impose 12 months of community custody. Defense counsel asserted the court had the discretion not to impose a consecutive sentence or community custody. The defense asked the court to impose 30 days in jail and no community custody "just to close the case" because "the conditions under the [underlying rape of a child in the second degree] case are much broader."

The court told the parties it wanted to impose a sentence concurrent to the

one Puth was currently serving for the community supervision violation because it would not "be in the best interest of the community to impose consecutive jail time." But the court determined that former RCW 9.94A.589(2)(a) compelled a consecutive sentence because Puth was currently "under sentence" for another felony conviction. The court sentenced Puth to serve 90 days in jail to run consecutive to his revoked sentence for the 2004 rape of a child in the second degree conviction, credit for time served, and no community custody.

Puth appeals.

ANALYSIS

Sex and Kidnapping Offender Registration Notification Forms

Puth argues that the trial court erred when it admitted his Sex and Kidnapping Offender Registration Notification forms as notice of his registration requirements. At trial, Puth argued that the forms were irrelevant. On appeal, he acknowledges that the forms were "minimally relevant" but claims that they were unduly prejudicial because they were confusing and cumulative. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). A court abuses its discretion if a decision is " 'manifestly unreasonable or based upon untenable grounds or reasons.' " State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002) (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). We will reverse a trial court's evidentiary decision only if no reasonable person would have decided the matter as the trial court did. State v. Thomas, 150 Wn.2d 821, 856, 83 P.3d 970 (2004).

Courts presume that relevant evidence is admissible, and the party seeking its exclusion bears the burden of establishing unfair prejudice. Carson v. Fine, 123 Wn.2d 206, 224-25, 867 P.2d 610 (1994). Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." ER 401. A trial court may exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value. ER 403. Evidence is "not rendered inadmissible under ER 403 just because it may be prejudicial." Carson, 123 Wn.2d at 224. Evidence is unfairly prejudicial if it is likely to elicit an emotional response rather than a rational decision. Powell, 126 Wn.2d at 264. Unfair prejudice is that caused by evidence of " ' "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." ' " Carson, 123 Wn.2d at 223 (quoting United States v. Roark, 753 F.2d 991, 994 (11th Cir. 1985) (quoting United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979))). We afford trial courts broad discretion "in balancing the probative value of evidence against its potential prejudicial impact." State v. Coe, 101 Wn.2d 772, 782, 684 P.2d 668 (1984).

A person commits the crime of failure to register as a sex offender if the person (1) has been convicted of a felony sex offense that requires offender registration and (2) the person knowingly fails to comply with the registration requirements. RCW 94.44.130, .132(1). Puth's sex-offender registration forms were probative to whether he "knowingly" failed to comply with his registration requirements. Puth signed the forms in the presence of a law enforcement

officer and they explicitly informed him when he must register, how he can register, that his obligation to register is continuous, and that failure to register is a criminal offense.

Puth argues that the danger of unfair prejudice outweighs any probative value to the forms because they risk confusing the jury. He claims that the forms' repeated references to the registration statute accompanied by "the King County Sheriff Department's legal analysis" of what the statute requires of offenders could cause confusion among jurors "regarding the applicable law."[2] But the form is discernibly designed to provide general information and instructions to sex offenders. And the court specifically instructed the jury as to the law of the case. The court instructed the jury, "The law is solely contained in my instructions to you"; "It . . . is your duty to accept the law from my instructions"; and, "You must apply the law from my instructions to the facts that you decide have been proved, and in this way decide the case." We presume that jurors follow the court's instructions absent evidence to the contrary. State v. Sullivan, 3 Wn. App. 2d 376, 380, 415 P.3d 1261 (2018).

Puth next contends that the sex-offender registration forms are prejudicial and "highly inflammatory" because they include a list of crimes that require offenders to register. Puth claims the list invited the jury to speculate which sex

---

[2] In the alternative, Puth argues that the court could have redacted the registration forms to include only information relevant to notice. But Puth did not ask the trial court to redact the forms; he asked the court "to exclude them in their entirety." We may refuse to review any claim of error that the defendant did not raise in the trial court. RAP 2.5(a). The policy of the rule is to encourage the efficient use of judicial resources. State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). We will " 'not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct.' " O'Hara, 167 Wn.2d at 98 (quoting State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). For these reasons, we do not address Puth's redaction argument.

crime he committed, rendering his stipulation to his 2004 rape of a child in the second degree conviction superfluous. But the jury knew from the parties' stipulation that Puth was convicted of a "Class A felony sex offense." And the court instructed the jury that they were "not to speculate as to the nature of the conviction." It was not unreasonable for the trial court to conclude that the jury was "capable of understanding the purpose for which [the forms are] being offered" and that there was no "danger that the jury is going to assume that Mr. Puth is guilty of all of [the listed crimes] or . . . try to guess which one he is guilty of."

Finally, Puth argues that the court abused its discretion by admitting all four of Puth's registration forms as exhibits because they were cumulative. He argues that this was especially bad because the State "presented other evidence" that Puth knew of his duty to register. A trial court may exclude evidence if its probative value is substantially outweighed by the "needless presentation of cumulative evidence." ER 403. At the same time, the State has the right to present ample evidence to prove every element of the crime. State v. Rahier, 37 Wn. App. 571, 574, 681 P.2d 1299 (1984). And, generally, the prosecution is "entitled to prove its case by evidence of its own choice." State v. Taylor, 193 Wn.2d 691, 698, 444 P.3d 1194 (2019) (citing Old Chief v. United States, 519 U.S. 172, 186-87, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)), review denied, ___ Wn.2d ___, 446 P.3d 780 (2020). Here, the registration forms show that Puth acknowledged on at least four separate occasions in 2013 and 2014 that he was notified he must register as a sex offender before he failed to register

7

between May 2016 and July 2017. The registration forms were not needlessly cumulative.

Consecutive Sentence

Puth claims the trial court mistakenly believed that it lacked discretion to impose a sentence concurrent to the one that he was currently serving for violating the lifetime community custody conditions imposed as a result of his 2004 conviction for rape of a child in the second degree.

As a general rule, the length of a criminal sentence is not subject to appellate review if it falls within the standard sentence range under the Sentencing Reform Act of 1981, chapter 9.94A RCW. RCW 9.94A.585(1). But review is still available to correct legal errors or abuses of discretion in determining what sentence applies. State v. Williams, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003). A trial court abuses its discretion if its decision is manifestly unreasonable, exercised on untenable grounds, or made for untenable reasons. State v. McCormick, 166 Wn.2d 689, 706, 213 P.3d 32 (2009). The failure to exercise discretion is itself an abuse of discretion. State v. O'Dell, 183 Wn.2d 680, 697, 358 P.3d 359 (2015) (citing State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005)).

" 'A trial court's sentencing authority is limited to that expressly found in the statutes.' " State v. Phelps, 113 Wn. App. 347, 354-55, 57 P.3d 624 (2002) (quoting State v. Theroff, 33 Wn. App. 741, 744, 657 P.2d 800 (1983) (citing State v. Eilts, 94 Wn.2d 489, 495, 617 P.2d 993 (1980))). Statutory construction is a question of law we review de novo. State v. Cooper, 176 Wn.2d 678, 680,

294 P.3d 704 (2013). The purpose of statutory interpretation is to determine and give effect to legislative intent and, when possible, we derive legislative intent solely from the plain language enacted by the legislature. State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). If the plain language of the statute is unambiguous, our inquiry ends. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Former RCW 9.94A.589(2)(a) provides:

[W]henever a person while under sentence for conviction of a felony commits another felony and is sentenced to another term of confinement, the latter term shall not begin until expiration of all prior terms.

Puth contends that the term "under sentence" as used in former RCW 9.94A.589(2)(a) should be narrowly construed to include only offenders who "commit[ ] a felony offense while on parole for another felony offense." Puth asserts he "was not on parole when he committed his failure to register offense and was instead on community custody." Division Three of this court has twice addressed this argument. See State v. Roberts, 76 Wn. App. 290, 884 P.2d 628 (1994) (interpreting former RCW 9.94A.400(2), recodified as former RCW 9.94A.589(2)(a) (LAWS of 2001, ch. 10, § 6)), review denied, 126 Wn.2d 1018, 894 P.2d 564 (1995); In re Post-Sentence Review of Allery, 6 Wn. App. 2d 343, 430 P.3d 1150 (2018).

In Roberts, the defendant stole a car the night he was released from prison into community custody. Roberts, 76 Wn. App. at 291. He pleaded guilty to the theft. At sentencing, Roberts argued that even though he was still under community custody for the prior conviction, the consecutive sentencing statute

did not apply to him because he had completed his term of confinement. <u>Roberts</u>, 76 Wn. App. at 291. The court disagreed and concluded that a "person under community supervision is clearly 'under sentence of a felony' within the meaning of that phrase in [former] RCW 9.94A.400(2)." <u>Roberts</u>, 76 Wn. App. at 292-93. We agree with the conclusion in <u>Roberts</u> that there is "no logical reason for differentiating between a person under community supervision vis-a-vis his being 'under sentence of felony' and the similar status of a parolee." <u>Roberts</u>, 76 Wn. App. at 292.[3]

Because the trial court did not abuse its discretion in admitting the Sex and Kidnapping Offender Registration Notification forms or in imposing a consecutive sentence, we affirm Puth's conviction for failure to register as a sex offender.

_____

WE CONCUR:

_____          _____

---

[3] <u>Allery</u> cited <u>Roberts</u> to conclude that the defendant "was in community custody and thus still under sentence for the 2010 felony conviction when he committed the current assault." <u>Allery</u>, 6 Wn. App. 2d at 347.