[No. 35383. Department Two. April 6, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH TATUM, *Appellant*.*

*Moore & Rabideau*, for appellant.

*Roger L. Olson*, for respondent.

*Reported in 360 P. (2d) 754.

DONWORTH, J.—Ralph Tatum (hereinafter called appellant) was convicted of the crime of first-degree forgery and was sentenced to life imprisonment as an habitual criminal.

The essential facts of the case are summarized as follows:

One William Tousin, of Pasco, received monthly welfare checks from the state of Washington. In February, 1960, Tousin did not receive his check (the checks were generally mailed to a rooming house in Pasco where Tousin resided.) The mail was normally left on a window ledge in the hallway of the rooming house. Appellant resided at the same place. Tousin's February check for $28.90 was endorsed and cashed at Sherman's Food Store in Pasco by someone other than the payee, Tousin.

An employee of the store, Caroline Pentecost, testified that although she could not specifically recall the above-mentioned transaction, the initials appearing on the face of the check were hers. She also testified that whenever a check was presented to her for payment at the store, the store manager had instructed her to initial it and then insert it into a "Regiscope" machine. This machine is designed to simultaneously photograph, through two separate lenses, both the check and the person facing the machine.

When it was discovered that the endorsement of the payee was a forgery, the Regiscope film of the transaction was sent to the Regiscope distributor in Portland to be developed. The processed film shows both the check and the person of appellant (from his waist up) with the food store in the background. Upon the trial, both the negative and the print therefrom were admitted in evidence, over appellant's objection.

This appeal presents two questions for our consideration:

(1) Were the Regiscope films (the negative and the print) authenticated sufficiently to warrant their admission into evidence? (2) Did Phillip Dale, the Regiscope distributor, qualify as an expert witness with respect to the filming process despite the fact that he was not a photographer by profession?

■ At the outset, with respect to the question of the admissibility of the Regiscope films, it should be noted that this court has for many years encouraged the admission and use of demonstrative evidence, including photographs. See *Kelly v. Spokane,* 83 Wash. 55, 145 Pac. 57 (1914); *Norland v. Peterson,* 169 Wash. 380, 13 P. (2d) 483 (1932); *Cady v. Department of Labor & Industries,* 23 Wn. (2d) 851, 162 P. (2d) 813 (1945). There is equally well-established precedent for the proposition that the admission or rejection of photographs as evidence lies within the sound discretion of the trial court. See *Quayle v. Knox,* 175 Wash. 182, 27 P. (2d) 115 (1933); *State v. Hardamon,* 29 Wn. (2d) 182, 186. P. (2d) 634 (1947); *State v. Little,* 57 Wn. (2d) 516, 358 P. (2d) 120 (1961). We have also held that the trial court's discretion extends to the sufficiency of identification. See *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223 (1948), and the cases cited therein.

■ What quantum of authentication do courts require before a photograph may be admissible in evidence? It is simply this—that some witness (not necessarily the photographer) be able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portray the subject or subjects illustrated. See 9 A. L. R. (2d) 899. The photograph need only be sufficiently accurate to be helpful to the court and the jury. See *Hassam v. J. E. Safford Lbr. Co.,* 82 Vt. 444, 74 Atl. 197 (1909); *Blake v. Harding,* 54 Utah 158, 180 Pac. 172 (1919).

■ Witness Pentecost testified that she recognized the background shown in the picture as that of the food store, and, as mentioned previously, she also testified as to the store's standard procedure of "regiscoping" each individual who cashed a check at the store. Phillip Dale testified at length concerning the Regiscope process. The testimony of these two witnesses taken together amounted to a sufficient authentication to warrant the admission of the photograph (both the print and the negative) into evidence.

The authentication supplied by the testimony summarized above, of course, did not preclude appellant from

attempting to prove that the individual portrayed was someone other than appellant, that the photograph was inaccurate in one or more respects, that appellant was somewhere else at the moment the photograph was taken, or any other such defense. But these arguments go to the weight rather than to the admissibility of the exhibits in question. In our opinion, the Regiscope exhibits, coupled with the other evidence produced by the state, sufficed to establish a *prima facie* case of first-degree forgery.

■ ■ The second question (whether or not witness Dale properly qualified as an expert witness respecting the Regiscope process) presents less difficulty. The fact that Dale was not a professional photographer and may have not understood all of the technical details of the process, did not, from an evidentiary standpoint, disqualify him from expressing an opinion in his testimony as to the possibility of altering a given Regiscope print. This court has many times held that the question of whether or not a witness is qualified to express an expert opinion lies within the sound discretion of the trial court. See *Wilson v. Wright*, 52 Wn. (2d) 805, 329 P. (2d) 461 (1958); *Kelly v. Valley Constr. Co.*, 43 Wn. (2d) 679, 262 P. (2d) 970 (1953); and *White v. Fenner*, 16 Wn. (2d) 226, 133 P. (2d) 270 (1943). In view of witness Dale's testimony that he personally had developed "four to five hundred thousand" individual Regiscope films, we hardly think that the trial court abused its discretion in this regard.

The judgment of the trial court is affirmed.

FINLEY, C. J., MALLERY, OTT, and HUNTER, JJ., concur.