# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                              Respondent,<br><br>     v.<br><br>EUGENE A. YOUNG,<br><br>                              Appellant. | No.  45996-5-II<br>(Consolidated with No. 46113-7-II)<br><br>PART PUBLISHED OPINION |
| STATE OF WASHINGTON,<br><br>                              Respondent,<br><br>     v.<br><br>CLAUDE A. HUTCHINSON,<br><br>                              Appellant. | No.  46113-7-II |

BJORGEN, A.C.J. — Eugene Young and Claude Hutchinson appeal their convictions for second degree rape, promoting commercial sexual abuse of a minor, communication with a minor for immoral purposes, and second degree attempted theft.

Young argues that (1) the trial court abused its discretion in ruling that there was sufficient evidence to support authenticating text messages from "Y.G." and "Papi," and that without those messages, there is insufficient evidence to support his conviction of communicating with a minor for immoral purposes. Hutchinson argues that (2) there is insufficient evidence to support his conviction of communicating with a minor for immoral purposes and (3) the prosecutor improperly impugned the integrity of his defense counsel when he asked a witness about whether his defense counsel was present at a pretrial interview. Both Young and Hutchinson (4) argue that the prosecutor misstated the law on accomplice liability during closing argument, which amounted to prosecutorial misconduct, and (5) raise additional arguments in their statements of additional grounds (SAG).

In the published portion of this opinion, we hold that the trial court reasonably exercised its discretion in ruling there was sufficient evidence to permit a reasonable juror to find that the text messages were authenticated or identified as from Young. In the unpublished portion, we address and reject Young's remaining arguments and Hutchinson's arguments. Accordingly, we affirm Young's and Hutchinson's convictions.

FACTS RELATING TO TEXT MESSAGES

In 2012, Young and Hutchinson promoted and directed two young women, N.H. and 16-year-old C.B.,[1] in prostitution activities. To facilitate her prostitution, C.B. communicated with

---

[1] "[I]n all opinions . . . in sex crime cases, [we] shall use initials . . . in place of the names of all witnesses known to have been under the age of 18 at the time of any event in the case." Gen. Order 2011-1, Division II, *In Re The Use Of Initials Or Pseudonyms for Child Witness in Sex Crime Cases*,

2

No. 45996-5-II
(Cons. w/ No. 46113-7-II)

Young through telephone calls and text messages. C.B. named the contact information for Young in her phone as "Papi." Report of Proceedings (RP) at 317-20.

Young and Hutchinson also forced 16-year-old R.E. to participate in a fraudulent check transaction for them. When the check transaction involving R.E. was concluded, Young put the contact name "Y.G." into R.E.'s cell phone. RP at 874. Later, Y.G. texted R.E. asking if she would be interested in prostitution. Y.G. was unsuccessful in persuading R.E. into prostitution, but the two continued to communicate about how she could get her money back after the fraudulent check transaction. *Id.*

The State subsequently charged both Young and Hutchinson with second degree rape, promoting commercial sexual abuse of a minor, first degree robbery, first degree kidnapping, and communication with a minor for immoral purposes. At trial, evidence was introduced describing these features of the text messages. The jury returned verdicts finding both Young and Hutchinson guilty of second degree rape,[2] promoting commercial sexual abuse of a minor,[3] communication with a minor for immoral purposes,[4] and second degree attempted theft.[5] Young and Hutchinson appeal their convictions.

---

http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2011-1&div=II.

[2] RCW 9A.44.050.

[3] Former RCW 9.68A.101 (2010) was amended in 2012 and 2013. These amendments do not affect the issues in this matter.

[4] Former RCW 9.68A.090 (2006) was amended in 2013. This amendment does not affect the issues in this matter.

3

No. 45996-5-II
(Cons. w/ No. 46113-7-II)

ANALYSIS

Young argues that the trial court abused its discretion when it determined that the State had presented sufficient evidence to authenticate that texts from Papi to C.B. and from Y.G. to R.E. were from Young. This argument fails because R.E. and C.B. both had personal knowledge that these contacts were Young and the contents of the text messages corroborate their interactions with him. Accordingly, the trial court reasonably exercised its discretion when it admitted the text messages.

I. STANDARD OF REVIEW AND LEGAL PRINCIPLES

We review a trial court's admission of evidence for an abuse of discretion. *State v. Bradford*, 175 Wn. App. 912, 927, 308 P.3d 736 (2013), *review denied*, 179 Wn.2d 1010 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id.*

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). In *State v. Bashaw*, 169 Wn.2d 133, 140-41, 234 P.3d 195 (2010) (quoting *State v. Payne*, 117 Wn. App. 99, 106, 69 P.3d 889 (2003)), *overruled on other grounds by State v. Guzman Nunez*, 174 Wn.2d 707, 285 P.3d 21 (2012),[6] the Supreme Court held that to meet this requirement

---

[5] Former RCW 9A.56.040 (2009) was amended in 2012 and 2013. These amendments do not affect the issues in this matter.

[6] The *Nunez* court expressly noted that it was not overruling *Bashaw*'s authenticity holding. *Nunez*, 174 Wn.2d at 709 n.1.

> [t]he party offering the evidence must make a prima facie showing consisting of proof that is sufficient "to permit a reasonable juror to find in favor of authenticity or identification."

"'[T]he proponent of offered evidence need not rule out all possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be.'" *In re Det. of H.N.*, 188 Wn. App. 744, 751, 355 P.3d 294 (2015) (alteration in original) (quoting *State v. Andrews*, 172 Wn. App. 703, 708, 293 P.3d 1203 (2013)).

"'Because under ER 104 authenticity is a preliminary determination, the court may consider evidence that might otherwise be objectionable under other rules.'" *Id.* (quoting *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 86, 272 P.3d 865 (2012)). "'A trial court may, therefore, rely upon such information as lay opinions, hearsay, or the proffered evidence itself in making its determination.'" *Id.* (quoting *State v. Williams*, 136 Wn. App. 486, 500, 150 P.3d 111 (2007)). "Such information must be reliable, but need not be admissible." *Id.* The rules of evidence provide a number of illustrative examples that demonstrate methods of authentication, including testimony of a witness with knowledge, ER 901(b)(1), and the contents of a message. *See* ER 901(b)(10)(iii). "'Once a prima facie showing has been made, the evidence is admissible under ER 901.'" *H.N.*, 188 Wn. App. at 751-52 (quoting *Rice*, 167 Wn. App. at 86).

Both parties rely on *Bradford* from Division One of our court. In *Bradford*, the court found under ER 901(a) that there was sufficient evidence introduced at trial to support a finding that text messages were what the State contended they were: text messages written and sent by Bradford. 175 Wn. App. at 928-29. The *Bradford* court drew on several pieces of evidence that supported authentication of the text messages, including evidence showing that: (1) Bradford's text messages were consistent with his desperate desire to communicate with the victim, (2) the

content of the texts in tandem with Bradford's corroborating behavior demonstrated that he was the one who sent them, (3) the timing of the texts was consistent, since the victim only received texts when Bradford was out of jail and did not receive texts when he was in jail, and (4) the victim and another witness testified that they believed the text messages were from Bradford. *Id.* at 929-30.

After *Bradford* was decided, ER 901(b) was amended to add a specific section illustrating some methods for authenticating e-mail:

> Testimony by a person with knowledge that (i) the email purports to be authored or created by the particular sender or the sender's agent; (ii) the email purports to be sent from an e-mail address associated with the particular sender or the sender's agent; and (iii) the appearance, contents, substance, internal patterns, or other distinctive characteristics of the e-mail, taken in conjunction with the circumstances, are sufficient to support a finding that the e-mail in question is what the proponent claims.

ER 901(b)(10).[7]

When Division One of our court examined the admissibility of text messages again in *H.N.*, it relied on ER 901(b)(10) by analogy. 188 Wn. App. at 759. In *H.N.*, the trial court allowed the State's expert medical witness to read into the record a set of e-mailed screen shots of text messages used as part of her opinion testimony to support the State's case in committing H.N. to involuntary treatment. *Id.* at 755-57. The trial court also allowed the screenshots of the text messages to be admitted as substantive evidence. *Id.* at 757. The *H.N.* court found this to be a proper exercise of the trial court's discretion in admitting the evidence for five reasons:  (1)

---

[7] The trial court's rulings on the authenticity of the text messages occurred on December 10, 2013 or afterwards. The effective date of amendment for ER 901(b)(10) was December 10, 2013.

H.N. had admitted to the expert witness that she had sent the text messages, (2) identifying information, including her phone number and full name, was displayed on the top of the text messages, (3) the contents of the text messages suggested H.N. was the sender, (4) the text messages were consistent with certain events that happened in H.N.'s life, and (5) the timing of the text messages was consistent with H.N.'s hospitalization on the night of the incident. *Id.* at 758-59.

## II. TEXTS FROM Y.G. TO R.E.

Turning to the present appeal, we hold that, similar to *Bradford* and *H.N.*, sufficient proof supported the trial court's ruling that the text messages from Y.G. to R.E. were what they purported to be: text messages from Young to R.E. First, R.E. had personal knowledge that the sender of the text messages was Young. R.E. testified that after Young used her phone to call someone, he put his number in her phone. R.E. also testified that Young had put "Y.G." as the contact name under that phone number. She further testified that the text messages she received from Y.G. were from the same number that Young had put in her phone.

Second, the content of some of the texts supports a finding that the texts in question are from Young. R.E. testified that Young forced her to participate in a fraudulent check transaction. Some of the texts corroborate this testimony as R.E. texted with Y.G. that she wanted some of her money back and Y.G. was agreeable. The text messages also show that Y.G. was interested in getting R.E. to engage in prostitution. Consistently, with *Bradford* and *H.N.*, R.E.'s personal knowledge, in tandem with the contents of the texts, is sufficient evidence to permit a reasonable trier of fact to find that Young was the one texting R.E.

7

Although it is true, as Young argues, that there is evidence showing that Hutchinson or some other person wrote the texts from Y.G., the trial court "considers only the evidence offered by the proponent and disregards any contrary evidence offered by the opponent" in determining whether evidence has been authenticated. *Rice*, 167 Wn. App. at 86. Young was free to bring up any contrary evidence, but this goes to weight, not admissibility. *State v. Tatum*, 58 Wn.2d 73, 76, 360 P.2d 754 (1961). For these reasons, the trial court did not abuse its discretion when it admitted the text messages under ER 901.

### III. TEXTS FROM PAPI TO C.B.

Similarly, Young contends that the text messages from Papi to C.B. were not properly authenticated. However, the record here also shows that the trial court did not err in ruling that Young was the one texting C.B. through the contact, Papi.

C.B. testified that she put Young's name and number into her phone, reflecting her personal knowledge that this person was Young. C.B. testified that she continued receiving text messages from Young and renamed him "Papi" in her phone. RP at 319-20. The subject matter of the text messages is consistent with C.B.'s testimony that she and Young worked together in prostitution. C.B.'s personal knowledge in tandem with the subject matter of the texts is sufficient evidence for a reasonable trier of fact to find that these texts came from Young. Accordingly, we hold the trial court did not abuse its discretion in admitting these text messages.

### CONCLUSION

The text messages at issue were properly authenticated under ER 901(a), and the trial court did not abuse its discretion in admitting them.

8

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

IV. DEFENDANTS' INITIAL CONTACT WITH C.B.

In September 2012, 16-year-old C.B. met Young and Hutchinson at a bus stop. They asked C.B. to cash a check for them, which she did. However, because the automated teller machine had a withdrawal limit, C.B. was only able to get a portion of the deposited check. Young and Hutchinson walked with C.B. to her home and exchanged phone numbers and contact information with her.

The next morning, Young and Hutchinson contacted C.B. and picked her up to get the rest of the money. While riding with C.B., Young explained that C.B. could make "more money" by "hav[ing] sex with guys." RP at 275-76. C.B. agreed to Young's proposition. Young and Hutchinson also picked up Young's girlfriend, N.H., and the four of them went to a motel.

At the motel, N.H. rented a room for her and C.B. Young and Hutchinson had their own room in the motel, but maintained contact with C.B. Young asked N.H. and C.B. to take their clothes off, and either Young or Hutchinson took pictures of them lying on the bed. Young then posted them to Backpage.com[8] to generate customers for their prostitution. N.H. instructed C.B. in how to engage in prostitution.

---

[8] Backpage.com is an online classifieds company that offers adult advertisements.

## V.  RAPE OF N.H.

During N.H.'s and C.B.'s prostitution, N.H. was beaten by Hutchinson over a couple of days.  Hutchinson slapped and choked N.H. repeatedly, and forced her to perform oral sex on him, Young, and another man.  N.H. believed that her sexual activity with Young was consensual.  Not long after the repeated beatings and rape, N.H. fled from the motel.

## VI.  C.B.'S PROSTITUTION

C.B. engaged in prostitution with at least 10 to 15 men.  Young would receive the money C.B. obtained through her prostitution and in exchange would buy her food and take care of her.  A few days after the prostitution started, C.B. was arrested by an undercover police officer.  About two days after her arrest, she contacted Young and began prostitution again.  Not long after, an undercover police officer posed as a client to C.B., resulting in the end of her prostitution.

## VII.  CONTACT WITH R.E.

R.E. became involved with Young and Hutchinson when Hutchinson approached her at a bus station.  R.E. testified that Hutchinson "kind of got [her] in a corner" and talked about "things he wanted to do to [her], kind of like rape kind of things, you know, kind of like oral sex."  RP at 841, 845.  Hutchinson said R.E. was "really pretty and talk[ed] about stuff that he wanted to do to [her]."  RP at 845.  As noted, Young and Hutchinson forced R.E. to participate in a fraudulent check transaction, and Young subsequently texted R.E. asking if she would be interested in prostitution.

PROCEDURE

I. REDIRECT OF C.B.

At trial, on redirect of C.B., the prosecutor elicited testimony that Young's attorney, but

not Hutchinson's, had attended a pretrial interview of C.B. Each defendant objected on the basis

of relevance, which the court overruled. The prosecutor then continued:

> [Prosecutor]: Were there investigators and others on their behalf asking you questions?
> [C.B.]: I don't think so, no.
> [Prosecutor]: Was [Young's attorney] asking you questions?
> [C.B.]: Yeah.
> [Prosecutor]: Was he the only one?
> [C.B.]: Yeah.

RP at 572.

II. CLOSING ARGUMENT

In closing argument, the prosecutor argued that Young was an accomplice to Hutchinson

in raping N.H. During his remarks, he made the following argument about the law of

accomplice liability and how it applied to Young:

> And he sits there. He's not some guy that just happened to be there. This is during the course and after days or at least a day of his own involvement with [C.B.]. [N.H.] is now nothing more than Mr. Hutchinson's hoe. He's the pimp for her. That's what's occurring here. When you read that accomplice liability instruction, you'll understand. *Mere presence or encouragement. It doesn't even have to be by words. It can be by just mere presence is sufficient for accomplice liability.*

RP at 1439 (emphasis added). Hutchinson's attorney objected and the court stated that the

prosecutor "may have misspoken" on that. RP at 1439. The prosecutor then began reading from

the jury instructions and stated how Young was an accomplice to Hutchinson's rape of N.H.:

11

> The instruction[] specifically says, and you'll read it -- it's No. 7 -- "A person who is present at the scene and ready to assist by his or her presence in aiding the commission of the crime." And that word "aid" includes words, acts, encouragement, support, or presence.
>
> I'll read it again. "The word 'aid' means all assistance, whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime."
>
> That's what the instruction says and that's what I say. He's there with knowledge of what's happening. It's not just that he doesn't do a gentlemanly thing or an honorable thing by forcing Mr. Hutchinson to stop. *By his mere presence and acquiescence to what Mr. Hutchinson is doing, he's assisting; he's giving it his stamp of approval.*

RP at 1439-40 (emphasis added). Again, Hutchinson's attorney objected, and the court sustained the objection. The prosecutor then said, "By his presence he's giving the stamp of approval to what is occurring here." RP at 1440. The court overruled the defense attorney's objection to this statement.

The prosecutor then proceeded with his argument, stating how Young was an accomplice:

> And what does the defendant do? What does Mr. Young do? Does somebody force him to take his pants down or pull his penis out? No. He does that. That's assisting. That's being involved. That's not just being an innocent bystander. That's not mere presence. He's an active participant.

RP at 1440-41.

### III. VERDICTS

At the close of trial, the jury returned verdicts finding both Young and Hutchinson guilty of second degree rape, promoting commercial sexual abuse of a minor, communication with a minor for immoral purposes, and second degree attempted theft. They appeal their convictions.

12

No. 45996-5-II
(Cons. w/ No. 46113-7-II)


ADDITIONAL ANALYSIS[9]

I. SUFFICIENCY OF EVIDENCE

Hutchinson argues that there is insufficient evidence to support his conviction of communication with a minor for immoral purposes[10] because the sexual act about which Hutchinson communicated with R.E., consensual sex with a 16 year old, was not illegal. However, because a rational juror could have found the elements of communication with a minor for immoral purposes beyond a reasonable doubt, Hutchinson's argument fails.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits a rational juror to find the essential elements of the crime beyond a reasonable doubt. *State v. McPherson*, 186 Wn. App. 114, 117, 344 P.3d 1283, *review denied*, 183 Wn.2d 1012 (2015). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a juror can draw from that evidence. *State v. Notaro*, 161 Wn. App. 654, 671, 255 P.3d 774 (2011). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant. *State v. Wilson*, 141 Wn. App. 597, 608,

---

[9] The jury also returned verdicts finding both Young and Hutchinson guilty of second degree attempted theft as a lesser included offense to first degree robbery. Both Young's and Hutchinson's appeal of these convictions fail, because any asserted grounds for challenging the theft convictions are without merit, as shown in this opinion. Therefore, we do not further discuss second degree attempted theft.

[10] Young also argues that that there is insufficient evidence to support the charge that he was the one who communicated with R.E. for immoral purposes. However, his entire argument is premised on this court ruling that the text messages from Y.G. were not properly authenticated. Because there was sufficient evidence to support the authentication of those text messages, Young's sufficiency of the evidence challenge fails.

13

171 P.3d 501 (2007). Circumstantial evidence is no less reliable than direct evidence. *Id*. We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

The crime of communication with a minor for an immoral purpose is intended to prohibit "'communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct.'" *State v. Hosier*, 157 Wn.2d 1, 9, 133 P.3d 936 (2006) (emphasis omitted) (quoting *State v. McNallie*, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993)). A person, however, cannot be punished for communications to a minor about sexual conduct that would be legal if performed. *State v. Luther*, 65 Wn. App. 424, 427-28, 830 P.2d 674 (1992).

Here, there is sufficient evidence in the record to permit a rational trier of fact to find beyond a reasonable doubt that Hutchinson communicated with R.E. for immoral purposes. R.E. testified that when Hutchinson approached her, he "kind of . . . corner[ed]" her and talked about "things he wanted to do to [R.E.], kind of like rape kind of things, you know, kind of like oral sex." RP at 841, 845. The jury could have also believed that Hutchinson had communicated to R.E. that he wanted to rape her based on the evidence at trial. This communication would involve sexual misconduct with a minor, and therefore, would support a conviction for communicating with a minor for immoral purposes. *Hosier*, 157 Wn.2d at 9.

Hutchinson argues that because R.E. was 16 years old, it would not have been illegal for him to have sexual intercourse with her. Indeed, Hutchinson is correct that if he only had communicated that he wanted to have oral sex with R.E., this in itself would not be able to

14

support a conviction for communication with a minor for immoral purposes, since consensual sex with one 16 years of age is not illegal. *See* RCW 9A.44.079.

However, on appeal, we admit "the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from that evidence." *Notaro*, 161 Wn. App. at 671. As shown above, a rational trier of fact could find that Hutchinson's communications were for the purpose of raping R.E. Unlike consensual oral sex, rape would involve sexual misconduct with a minor, and this evidence therefore supports Hutchinson's conviction of communicating with R.E. for immoral purposes.

## II. PROSECUTORIAL MISCONDUCT

Hutchinson argues that the prosecutor first committed prosecutorial misconduct because he impugned the integrity of defense counsel by inquiring about her absence at an interview of the victim. Hutchinson and Young both argue that the prosecutor committed prosecutorial misconduct in his characterization of the law on accomplice liability. We find that neither of these comments were improper, and accordingly, their claims fail.

1. Legal Principles

To establish prosecutorial misconduct, the defendant must prove that the prosecuting attorney's remarks were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Among other ways, a prosecuting attorney commits misconduct by impugning the integrity of defense counsel or by misstating the law. *Id.*; *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014). Because we find that the challenged remarks were not misconduct, we do not reach the question of prejudice.

2.      Impugning Defense Counsel

Hutchinson first claims that the prosecutor impugned the integrity of defense counsel and that this amounted to prosecutorial misconduct. It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity. Examples include repeatedly referring to defense counsel's tactics as "bogus" and involving "sleight of hand," *State v. Thorgerson*, 172 Wn.2d 438, 451-52, 258 P.3d 43 (2011); referring to defense counsel's closing argument as a "number of mischaracterizations" and "an example of what people go through in a criminal justice system when they deal with defense attorneys," *State v. Warren*, 165 Wn.2d 17, 29-30, 195 P.3d 940 (2008); and suggesting that while the prosecution sees that justice is served, defense counsel only has an obligation to a client. *State v. Gonzales*, 111 Wn. App. 276, 283-84, 45 P.3d 205 (2002).

Here, on redirect of C.B., the prosecutor inquired into whether Hutchinson's defense counsel was present at an interview of C.B. The prosecutor asked C.B. who participated in the interview and asked a few questions that established that Hutchinson's defense counsel was not present. After the trial court overruled an objection on the basis of relevance, the prosecutor again pointed out that only Young's attorney asked C.B. questions at the interview.

This is not the sort of blatant impugning of defense counsel found in *Thorgerson*, *Warren*, or *Gonzales*. Rather, the prosecutor merely could have been setting the stage with his witness to allow him to better question her about the interview, which is what he later did. We find that the integrity of defense counsel was not impugned, and Hutchinson does not meet his burden in showing that this was misconduct.

16

3.       Closing Argument on Accomplice Liability

Hutchinson and Young also argue that the prosecutor committed prosecutorial misconduct by misstating the law on accomplice liability while discussing Young's second degree rape charge involving N.H.  We hold that the prosecutor's comments did not constitute misconduct.

Accomplice liability requires knowledge of the crime and that the accomplice:  (1) solicits, commands, encourages, or requests another person to commit it, or (2) aids or agrees to aid another person in planning or committing it.  RCW 9A.08.020(3)(a).  "Presence at the scene of an ongoing crime may be sufficient if a person is 'ready to assist.'"  *In re Welfare of Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979) (quoting *State v. Aiken*, 72 Wn.2d 306, 349, 434 P.2d 10 (1967)).  However, mere presence coupled with assent is insufficient to establish accomplice liability.  *Wilson*, 91 Wn.2d at 491; *State v. Everybodytalksabout*, 145 Wn.2d 456, 472, 39 P.3d 294 (2002).

Here, looking at the prosecutor's argument on accomplice liability as a whole, we find that it was not improper.  The prosecutor's first statement, that mere presence is sufficient for accomplice liability, was clearly wrong and objectionable.  Defense counsel objected and the trial court told the jury that the prosecutor misspoke.  As further discussed below, the prosecutor then correctly quoted from the jury instruction and argued that presence plus giving his stamp of approval was enough for accomplice liability.  In this full context, the prosecutor's initial misstatement does not rise to the level of impropriety.

The prosecutor then quoted from the jury instruction and said, "By his mere presence and acquiescence to what Mr. Hutchinson is doing, he's assisting; he's giving it his stamp of approval." RP at 1440. The defendant objected and the trial court sustained the objection. However, it is not clear whether this actually misstates the law. Accomplice liability requires knowledge of the crime and, as relevant here, aiding or agreeing to aid in committing it. RCW 9A.08.020(3)(a)(ii). Thus, a person can be an accomplice based on presence if that presence assists in the crime. The jury instruction states that an accomplice is one who, with knowledge that it will promote or facilitate the commission of the crime, "aids" or agrees to aid in the commission of a crime. Clerk's Papers (CP) at 56. The instruction further states: "The word 'aid' means all assistance whether given by words, acts, encouragement, support, *or presence*. A person *who is present* and is ready to assist *by his or her presence* is aiding in the commission of a crime." CP at 56 (emphasis added). The instruction then gives the caveat that "more than mere presence and knowledge of the criminal activity" must be shown. CP at 56.

Based on the instruction and the entire context, we do not find this argument improper. The prosecutor did not argue that Young was aiding by his presence alone, but that by his presence he also gave his "stamp of approval" to the crime. RP at 1440. In some situations, a "stamp of approval" may be little different from presence plus "assent," which is insufficient for accomplice liability. *Wilson*, 91 Wn.2d at 491. Here, however, one may reasonably infer from the evidence that Young was both present and ready to assist with his presence, which is sufficient to satisfy accomplice liability. Thus, the prosecutor's argument and "stamp of approval" characterization is consistent with the instruction's statement that one who is present

18

and is ready to assist by his or her presence is aiding in a crime. In addition, the prosecutor

followed this statement up with the argument that Young was actively assisting by pulling his

pants down. He argued: "That's not just being an innocent bystander. That's not mere

presence. He's an active participant." RP at 1141.

Viewing the prosecutor's argument as a whole, we find it sufficiently based in the law as

expressed in the instructions to avoid characterization as improper.

### III. SAG CLAIMS

1.     Accomplice Liability Instruction

In his SAG, Young argues that the accomplice liability instruction was erroneous because

it refers to "a crime" rather than "the crime." SAG at 3. Our Supreme Court has expressly found

that it is error to use "a crime" in the accomplice liability instruction in *State v. Roberts*, 142

Wn.2d 471, 509-11, 14 P.3d 713 (2000) and *State v. Cronin*, 142 Wn.2d 568, 578-79, 14 P.3d

752 (2000). The instruction at issue, though, refers appropriately to "the crime" and mirrors the

statute on accomplice liability. CP at 56; RCW 9A.08.020; 11 WASHINGTON PRACTICE:

WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 10.51. Accordingly, Young's

claim fails.

2.     Lesser Included Charge/Ineffective Assistance of Counsel

Hutchinson argues that he should have been given a lesser included charge of second

degree promoting prostitution to his promoting commercial sexual abuse of a minor charge

because he did not know the age of the minor.[11] A defendant is entitled to an instruction on a

---

[11] Promoting commercial sexual abuse of a minor does not require the State to prove that
Hutchinson knew the age of the minor. The Legislature has specifically stated this is not a

lesser included instruction if two conditions are met: (1) each of the elements of the lesser offense are a necessary element of the offense charged and (2) the evidence supports an inference that the lesser crime was committed. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). Both the legal[12] and factual prongs are met here.

However, Hutchinson's defense counsel never requested this lesser included instruction. Therefore, the appropriate analysis is whether Hutchison's defense counsel was ineffective in not requesting a jury instruction. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014) (when defendant had shown he was entitled to lesser included instruction but had not requested it at trial, appropriate analysis was whether it was ineffective assistance of counsel not to request the lesser included instruction).

In order for Hutchinson to prevail on an ineffective assistance claim, he must overcome the presumption that his counsel was effective. *State v. Witherspoon*, 180 Wn.2d 875, 885, 329 P.3d 888 (2014). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome this presumption, Hutchinson must demonstrate that (1) counsel's representation fell below an

---

defense. RCW 9.68A.110(3) ("In a prosecution under . . . RCW 9.68A.101 [promoting commercial sexual abuse of a minor] . . . it is not a defense that the defendant did not know the alleged victim's age.").

[12] *Compare* former RCW 9.68A.101 *with* RCW 9A.88.080; *see also State v. Johnson*, 173 Wn.2d 895, 898, 270 P.3d 591 (2012) ("The jury was instructed on both attempted promotion of commercial sexual abuse of a minor and attempted promotion of prostitution, a lesser included offense.").

objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Id.* at 687-88.

As to the first prong, a criminal defendant can rebut the presumption of reasonable performance by demonstrating that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). In this case, however, there is a conceivable reason for why defense counsel did not request this instruction: an all-or-nothing approach. *Id.* at 43; *Witherspoon*, 180 Wn.2d at 886. Defense counsel could have reasonably thought that it was better to risk the choice between conviction of promoting commercial sexual abuse of a minor or acquittal than it was to give the jury a second option. *State v. Hoffman*, 116 Wn.2d 51, 112, 804 P.2d 577 (1991) ("The defendants cannot have it both ways; having decided to follow one course at the trial, they cannot on appeal now change their course and complain that their gamble did not pay off.").

As to the second prong, the defendant has not met his burden in showing prejudice. We must presume that the jury would not have convicted Hutchinson of promoting commercial sexual abuse of a minor unless the State had met its burden of proof. *Grier*, 171 Wn.2d at 43-44. As such, a compromise verdict would not have changed the outcome of the trial. *Id.* at 44.

Accordingly, Hutchinson's claim fails.[13]

_____

[13] Hutchinson also cites *State v. Daniels* to support his argument. 183 Wn. App. 109, 332 P.3d 1143 (2014). However, this case is about the double jeopardy doctrine, which is irrelevant to this claim.

3.      Tampering with a Witness

Hutchinson also states that Young tampered with one of the State's witnesses, N.H., because she talked to Young in the Pierce County Jail. The record indeed indicates that Young and N.H. were involved in a relationship and talked frequently while he was in jail. However, the record contains no evidence of coercion or tampering in these conversations. In fact, N.H. testified that she never minimized anything that Young did or withheld information regarding Young's involvement. It is the province of the jury to determine N.H.'s credibility, and we will not revisit that determination on appeal. *State v. Dietrich*, 75 Wn.2d 676, 677-78, 453 P.2d 654 (1969). Accordingly, we disagree with Hutchinson's claim of witness tampering.

CONCLUSION

We hold that (1) the trial court reasonably exercised its discretion in ruling there was sufficient evidence that the text messages were authenticated or identified as from Young, (2) there was sufficient evidence presented at trial from which a rational trier of fact could have found the elements of communication with a minor for immoral purposes beyond a reasonable doubt for both defendants, (3) the prosecutor's questioning of the witness about a pretrial interview was not improper and did not impugn the integrity of defense counsel, (4) the prosecutor's discussion of accomplice liability during closing argument was not improper, and

No. 45996-5-II
(Cons. w/ No. 46113-7-II)

(5) none of the SAG claims warrant reversal of the defendants' convictions. Accordingly, we

affirm Young's and Hutchinson's convictions.

BJORGEN, A.C.J.

We concur:

MAXA, J.

LEE, J.