# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46597-3-II |
| Respondent, | |
| v. | |
| RONALD LEE WISNER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Ronald Wisner appeals his conviction for one count of first degree identity theft. He argues that the trial court erred by (1) admitting photographic and video evidence without proper authentication and by (2) imposing legal financial obligations (LFOs) without inquiring as to Wisner's ability to pay. We agree that the court erred by admitting the photographic and video evidence and that the error prejudiced Wisner. We reverse his conviction and remand for further proceedings. We do not reach the issue of LFOs.

## FACTS

On April 4, 2013, Mallory Wooden was working as a bank teller for Chase Bank. A man purporting to be Duane Hinkle approached Wooden's teller window to deposit a check. The check was made out to Duane Hinkle for $8,848.07. The back of the check had a signature purporting to be Hinkle's. The man purporting to be Hinkle filled out a deposit slip indicating $6,848.07 to be deposited into the account and asking for $2,000.00 in cash back. Wooden processed the transaction and gave the man $2,000.00 in cash.

Two days later on April 6, 2013, a man claiming to be Hinkle approached Shauna Sager, a bank teller at another Chase Bank location, to deposit a check. The check was made out to Duane Hinkle for $7,255.09. The back of the check had a signature purporting to be Hinkle's. The man claiming to be Hinkle sought to deposit $4,755.09 into Hinkle's account and get $2,500 cash back. The bank was unable to process the $2,500 cash back and the man claiming to be Hinkle then asked to withdraw $2,500 from Hinkle's savings account. Sager completed the transaction.

In the days following, the real Duane Hinkle discovered the unauthorized transactions in his account, contacted Chase Bank, and filed a police report. Months later, Wisner was arrested after his community corrections officer recognized him in photographs taken from bank surveillance video.

In July 2014, the State charged Wisner with two counts of first degree identity theft. The first charge related to the transaction on April 4, 2013. The second charge related to the April 6 transaction.

At trial, the State introduced surveillance video footage showing Wooden at her teller window assisting a male customer. The State contended the video captured the events in question on April 4 and that Wisner was the man in the video. The State also introduced several still photographs captured from the surveillance video. To lay a foundation for the video and photographs, the State offered Wooden's testimony. Wooden testified that she saw herself in the images and that the scene depicted is the Chase Bank branch she worked at. Wooden admitted she had no independent recollection of the incident or the person going through the transaction

with her as shown in the images. She testified that the video was of the event in question but admitted on voir dire that this was based entirely off information told to her by the State when she was shown the video the day before trial. Wooden testified that the video showed her typical practice when negotiating a check—taking out the identification, running the check through the scanner, and handing out the cash. Wooden testified on voir dire that she does not work in the security department, has no responsibility for the maintenance or care of the videos, and has no access to the videos. Although Wooden admitted she had no clue if the date and time listed on the video were correct, the court allowed her to testify as to the date and time over Wisner's objection.[1] Wooden testified that she had no recollection that the person in the video was the one who actually represented himself as Duane Hinkle.

Wisner consistently objected to Wooden's testimony for speculation and lack of foundation and objected to the admission of the photographs, arguing, "I would object based upon a lack of foundation. She has not testified that she has an independent recollection that this is an accurate video of what transpired."[2] I Report of Proceedings (RP) at 95. The trial court overruled Wisner's objections and admitted the surveillance video and photographs taken therefrom.

---

[1] The exhibits show a date and time listed in the upper left corner of the photograph, but it appears to be a product of the viewing software or potentially an individually-made bookmark or label, rather than a time stamp produced by the surveillance camera.

[2] Wisner objected for speculation and lack of foundation a minimum of six times during Wooden's testimony.

3

As to the April 6 transaction, the State introduced Sager's testimony. Sager explained that she had confirmed that she was the teller who managed the transaction in question by looking up the documents in the bank's computer system. Sager described her actions in a typical check transaction step by step, much like Wooden did. The State presented no video or photographic evidence in relation to the April 6 transaction.

Following trial, the jury found Wisner guilty of count I and not guilty of count II. The court sentenced Wisner to 63 months in prison and imposed $4,025 in LFOs. Wisner appeals.

ANALYSIS

Wisner argues that the trial court erroneously admitted the surveillance video and the still photographs taken from the video without proper authentication. We agree.

I. VIDEO FOOTAGE CHALLENGE PRESERVED

As an initial matter, the State argues that Wisner did not preserve his challenge to the authentication of the surveillance video because he failed to object when the State moved to admit the video as an exhibit at trial. We hold that Wisner did preserve his challenge to the video footage based on his repeated objections during Wooden's testimony.[3]

With limited exceptions, the rule in Washington is that "'a litigant cannot remain silent as to claimed error during trial and later, for the first time, urge objections thereto on appeal.'" *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985) (quoting *Bellevue Sch. Dist. 405 v.*

---

[3] Wisner argues that insofar as the issue was not preserved for appeal, his counsel rendered ineffective assistance. Because we hold that the issue was properly preserved, we do not address his ineffective assistance of counsel claim.

*Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)). Where, however, a litigant has sufficiently

advanced the issue below, giving the trial court an opportunity to rule on relevant authority, and

the court does so rule, it may not be necessary to object at the precise time of admission of the

claimed erroneous evidence in order to preserve the issue for appeal. *State v. Sullivan*, 69 Wn.

App. 167, 170, 847 P.2d 953 (1993).

Here, Wisner repeatedly objected to Wooden's testimony about the events allegedly

shown in the still photographs and the video footage. During the State's direct examination of

Wooden, the State showed Wooden several still photographs captured from the surveillance

video.[4] When the State moved to admit the photographs, Wisner asked to voir dire Wooden as

follows:

> [Wisner]: Ms. Wooden, you have no independent recollection of this incident; we've already established that, correct?
> [Wooden]: Mm-hmm.
> [Wisner]: So you don't remember, essentially, which person went through that transaction with you, correct?
> [Wooden]: Yes.
> [Wisner]: Alright. So you were shown these videos, when, last week, by the Prosecutor?
> [Wooden]: Yesterday.
> [Wisner]: Yesterday? And at that time, you were informed that this was, in fact, the transaction?
> [Wooden]: Mm-hmm.
> [Wisner]: Alright. So you're not going off of your own information, you're going off of what was told to you by the Prosecutor regarding this transaction, correct?
> [Wooden]: The -- the documents, and the video footage, and the photos, yes.
> [Wisner]: Thank you. I would object, lack of foundation.

---

[4] The photographs appear to be screen shots taken on the viewing software during the video footage.

I RP at 92-93. The State responded by asking Wooden several more questions about the contents of the video. Wisner conducted voir dire again and ultimately reiterated his objection:

> Again, Judge, I would object based upon a lack of foundation. She has not testified that she has an independent recollection that this is an accurate video of what transpired.

I RP at 95. The trial court overruled Wisner's objections and admitted the photographs.

When the State sought to show the actual video footage and have Wooden testify to the events shown therein, Wisner again objected,

> And Judge, I would object to that. That would be speculation. She's already testified that she has no independent recollection of it. She can watch it and say what she thinks is happening, but she doesn't have a recollection, so she's not actually in a position to say what happened definitely.

I RP at 102-03. Again, the court overruled Wisner's objection. The State moved to admit the video footage as exhibit 5. Wisner did not renew his objection. The State played the video and asked Wooden questions about the contents of the video. When the State asked approximately what time the man in the video entered the bank, Wisner again objected based on speculation and foundation and conducted more voir dire:

> [Wisner]: You saw this video for the first time yesterday?
> [Wooden]: Yes.
> [Wisner]: Alright. So you have no -- absolutely no clue if the -- the -- the date and time stamped on this video is accurate or not, correct?
> [Wooden]: Correct.

I RP at 116-17. The court overruled Wisner's objection.

Because the photographs were screen shots taken directly from the surveillance video, the requisite foundation needed to admit the photographs and the video were nearly identical. This

6

logical reality is exemplified by the fact that every time Wisner objected to the photographs, his challenge for foundation and speculation went to the authentication of the video and likewise, the State's attempt to lay a proper foundation necessarily involved the nature of the surveillance video. We hold that Wisner's objections sufficiently gave the trial court an opportunity to consider and rule on the authentication of the surveillance video and, therefore, Wisner's challenge to the video footage was adequately preserved for appeal.

II.  SURVEILLANCE VIDEO AND PHOTOGRAPHS NOT PROPERLY AUTHENTICATED

We review a trial court's admission of evidence for an abuse of discretion.  *State v. Magers*, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).  A trial court abuses its discretion when it bases its decision on untenable or unreasonable grounds.  164 Wn.2d at 181.

ER 901 requires proper authentication of videos and photographs as a condition precedent to admissibility.  For authentication purposes, courts treat videos like photographs, which Washington courts have a policy of liberally admitting.  *State v. Newman*, 4 Wn. App. 588, 593, 484 P.2d 473 (1971).  To lay a proper foundation for admitting a video, any witness, not necessarily the videographer, must be "able to give some indication as to when, where, and under what circumstances the [video] was taken, and that the [video] accurately portray the subject or subjects illustrated."  *State v. Tatum*, 58 Wn.2d 73, 75, 360 P.2d 754 (1961).  If these two criteria are met, the video recording is admissible at the trial court's discretion.  *Newman*, 4 Wn. App. at 593.

In *Tatum*, a forgery case involving a stolen check, the State sought to introduce film from a Regiscope machine showing a photograph of the check and the individual attempting to use it.

58 Wn.2d at 74. There, an employee of the store testified that she could not specifically recall processing the victim's check, but noted that her initials appeared on the face of the check consistent with her regular practice. 58 Wn.2d at 74. The employee also identified the store from the background of the photograph. 58 Wn.2d at 75. Another witness testified in detail to the Regiscope process. 58 Wn.2d at 75. On appeal, our Supreme Court affirmed the trial court's admission of the photograph, holding that "[t]he testimony of the two witnesses taken together amounted to a sufficient authentication to warrant the admission of the photograph." 58 Wn.2d at 75.

Here, the State relied on Wooden's testimony to authenticate the video and the still photographs from it. Like the employee in *Tatum*, Wooden was able to identify herself and the bank in the video, but admitted she had no independent recollection of the transaction being shown. Unlike in *Tatum*, however, the State provided no other witness testimony as to the process of the surveillance camera. The State argues that Wooden's testimony describing the actions she appeared to be taking in the video was sufficient to authenticate the video. However, the State did not admit the video as evidence of Wooden's check transaction process. Rather, the State purported that the video specifically showed Wisner at the bank conducting the transaction in question with Wooden *on April 4, 2013*. But Wooden's testimony as to when the video took place and the fact that it purported to show the transaction at issue in the case was based entirely on information provided to her by the State. Wooden's inability to recall the transaction at all or

8

testify as to whether the video was actually the April 4 transaction is insufficient to authenticate the video.[5]

We hold that the trial court abused its discretion by admitting the surveillance video and still photographs captured from it without proper authentication.

C.      *The Court's Error Was Prejudicial*

A trial court's evidentiary error that does not result in prejudice to the defendant is not grounds for reversal. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). "[E]rror is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981).

Erroneously admitting the surveillance video and photographs captured therefrom reasonably affected the outcome of Wisner's trial. The photographs and surveillance video were the central focus of the State's case against Wisner. Without the surveillance video the only evidence left against Wisner would be a handwriting expert's analysis who noted that Wisner could not be identified or eliminated as the author of the fraudulent deposit slips. The impact of the video and photographic footage is highlighted by the fact that the jury found Wisner not guilty of count II. The primary difference in evidence between count I and count II was the surveillance video and photographs taken from it. Given this, there is a reasonable probability

---

[5] The State does not address this "when" issue in their brief. The State notes, "We also know this event happened during the course of [Wooden's] employment." Br. of Resp't at 20. This is insufficient to determine whether the video actually showed the April 4 transaction.

that the exclusion of the surveillance video would have changed the outcome of the trial. We hold that the trial court's error in admitting improperly authenticated video and photographic evidence was prejudicial.

We reverse Wisner's conviction and remand for further proceedings.[6]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Lee, J.

___

[6] Wisner also argues that the sentencing court improperly imposed LFOs without considering his ability to pay. Because we reverse Wisner's conviction due to the erroneous and prejudicial admission of the surveillance video and photographs, we do not address this issue.